IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAYMOND TERILLI,** | : | **Civil No. 1:17-CV-1360** |
| Plaintiff, | : | |
| v. | : | |
| **MATTHEW FALVEY, et al.,** | : | |
| Defendants. | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

In the instant matter, Plaintiff Raymond Terilli ("Plaintiff") seeks compensatory and punitive damages for physical injuries allegedly caused by Defendants Matthew Falvey ("Mr. Falvey") and Karen Falvey ("Mrs. Falvey"), husband and wife (collectively, "Defendants"). Presently before the court are cross motions for partial summary judgment (Docs. 31, 36), and Defendants' motion to dismiss a claim pursuant to Federal Rule of Civil Procedure 50 (Doc. 58). For the reasons that follow, Plaintiff's motion will be granted in part and denied in part, and Defendants' motions will be denied.

## **I. Background**

The facts relevant to the disposition of this matter are brief and not in dispute. On April 29, 2016, Defendants were sitting at a bar. Mr. Falvey left his seat at the bar for several minutes. During this time, Plaintiff walked up to the bar and, after a few moments, leaned in very close to Mrs. Falvey and began speaking to her. From

her recollection, the only speech she was able to discern from Plaintiff was "how you doin," a statement that Plaintiff was from New Jersey, and the phrase "Jersey boys." (Mrs. Falvey Dep, pp. 46-47.) Although Mrs. Falvey believes that Plaintiff's leg may have brushed up against hers at some point, Plaintiff did not otherwise make physical contact with her. (*Id.* at 52, 63.) Mr. Falvey soon returned, and Mrs. Falvey "g[a]ve him a look" which she stated was meant to convey that Plaintiff was making her uncomfortable. (*Id.* at 106-107.) Moments after "the look," Mr. Falvey stood up from his seat at the bar, walked behind Plaintiff, placed his arms around Plaintiff's upper body, and pulled Plaintiff away from the bar. While pulling Plaintiff, both men appear to crash to the floor. According to Mr. Falvey, he did not intend to pull Plaintiff to the ground, but merely desired to pull him out of his wife's personal space. Specifically, Mr. Falvey stated that, because he was wearing penny loafers, he slipped, and both men fell backwards. As a result of the fall, Plaintiff sustained injuries including lacerations to his head, which required staples, and a concussion. Defendants left the bar immediately after the altercation. This suit followed.

## II. **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Through summary adjudication, a court may dispose of those claims

that do not present a "genuine dispute as to any material fact," and for which a trial would be "an empty and unnecessary formality." *Id.* In order to prevail on a motion for summary judgment, the moving party must produce "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014).

Both parties must support their factual assertions by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Rule 56(e) allows the court to deem undisputed any fact not properly countered by record evidence. *See* Fed. R. Civ. P. 56(e)(2). The nonmoving party must "go beyond the pleadings by way of affidavits, depositions . . . or the like in order to demonstrate specific material facts which give rise to a genuine issue." *Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, the court is not to engage in credibility determinations or the weighing of evidence. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993). Instead, "[i]nferences should be drawn in the light most favorable to the

non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Id.*

## III. <u>Discussion</u>

Plaintiff moves this court for summary judgment on both counts against Mr. Falvey, sounding in negligence and battery. (Doc. 31.) Defendants move to dismiss Plaintiff's claim for punitive damages. (Doc. 36.) After the deadline set by this court for filing dispositive motions, Defendants filed a motion pursuant to Federal Rule of Civil Procedure 50, averring that Plaintiff had presented no evidence that would support a finding of liability for Mrs. Falvey. The court will address each argument in turn.

### A. Summary Judgment as to the Battery Claim Against Mr. Falvey

Plaintiff argues that he is entitled to summary judgment on his battery claim because Mr. Falvey has admitted to all the essential elements of a claim for battery. A battery is "an unconsented touching that is either harmful or offensive." *Brunwasser v. Cohen*, No. 1792 WDA 2012, 2014 WL 10987053, *6 (Pa. Super. Ct. Jan. 30, 2014) (quoting *Cooper ex rel. Cooper v. Lankenau Hosp.*, 51 A.3d 183, 191 (Pa. 2012)). More specifically, to be found liable for the tort of battery, a defendant must be found to have intended to cause a harmful or offensive contact with another, and a harmful contact, directly or indirectly, must result. Restatement (Second) of Torts § 13 (1965). Defendant argues two points in opposition to Plaintiff's motion

4

for summary judgement: (1) he did not intend to cause injury to Plaintiff and (2) the contact was not "offensive." The court will first address whether Plaintiff had the requisite intent to support a claim for battery.

Mr. Falvey initially argues that he intended only to pull Plaintiff away from Mrs. Falvey and that the actual fall and resulting injury to Plaintiff was accidental. Mr. Falvey's argument on this point denotes a fundamental misunderstanding of the notion of "intent" in tort law. Under "Pennsylvania tort law, the Second Restatement of Torts, on which the highest courts of Pennsylvania regularly rely, clearly provides that intent exists when the actor desires to cause the consequences of his act, or that he believes the consequences are substantially certain to result from it." *Betz v. Satteson*, 259 F. Supp. 3d 132, 191 (M.D. Pa.), *aff'd*, 715 F. App'x 213 (3d Cir. 2017) (quotation omitted). In this case, it is irrelevant whether Mr. Falvey had the specific intent to lacerate Plaintiff's scalp and give Plaintiff a concussion; the "consequence" referred to in *Satteson*, is the harmful or offensive contact, not the ultimate injury. *See Cooper ex rel. Cooper v. Lankenau Hosp.*, 51 A.3d 183, 191-92 (Pa. 2012) ("No intent to harm the [plaintiff] need be established.") (citing Patrick Kelley, Infancy, Insanity, and Infirmity in the Law of Torts, 48 Am. J. Juris. 179, 189 (2003) ("In developing the tort law of intentional battery, the courts fairly quickly determined that the intent required for battery was not the evil intent

associated with criminal *mens rea*, but was merely the intent to bring about a harmful or offensive contact to the plaintiff")).

Mr. Falvey unequivocally admitted to his intent to make contact with Plaintiff. (Doc 44, ¶ 5 ("Mr. Falvey slipped while removing Plaintiff from the immediate vicinity of his wife . . .") (citing Mr. Falvey Dep., p. 98 ("I'm just trying to pull him back . . ."); *see also* Mr. Falvey Dep., p. 72 ("Q: Okay. You grabbed [Plaintiff] and threw him to the ground, right? A: Right. . . . I didn't throw him to the ground. We fell."); p. 176 ("I grabbed him from behind and slipped . . ."); p. 103 ("I was trying to back him away from my wife . . ."); p. 102 ("Q: Is it fair to say that you pulled [Plaintiff] away from the bar? A: I was pulling him back from the bar . . . Q: Why were you doing this? A: I was trying to get him away from my wife . . . [A]ll I could think about was get him away from my wife. I gave no thought to consequences, be it to him or myself, or to the bar."); p. 178 ("Q: It's fair to say that you started the physical altercation, right? [Plaintiff] didn't start being physical? A: Correct.").) As such, the intent element of a battery claim is satisfied. It is irrelevant whether Mr. Falvey specifically contemplated or intended head injuries at the time he moved to pull Plaintiff away from Mrs. Falvey; it is sufficient that he intended to pull him away at all. *See Daniels v. Lutz*, 407 F. Supp. 2d 1038, 1049 (E.D. Ark. 2005) ("To prevail on her battery claim, the [p]laintiff need not prove that [the defendant] intended to cause harm, but rather only that she intended to cause some harmful or

offensive contact or that she acted with the intent to create the apprehension of some harmful or offensive contact and that a harmful or offensive contact resulted"), *cited by Satteson*, 259 F. Supp. 3d at 191 n.310; *see also* Charles F. Krause, Alfred W. Gans, Characteristics of necessary intent, 8 Am. Law of Torts § 26:14 ("If an act is done with the intention of inflicting upon another an offensive but not a harmful bodily contact . . . and this act causes a bodily contact to the other, the actor is liable for a battery although the act was not done with the intention of bringing about the resulting bodily harm.").

Defendants next argue that Plaintiff is not entitled to summary judgment because, even assuming that Mr. Falvey had the requisite intent to contact Plaintiff, the contact he made was not offensive under the Restatement definition. "Implicit in the tort of battery is the recognition that an individual has a right to be free from unwanted and offensive or harmful intrusions upon his own body." *Herr v. Booten*, 580 A.2d 1115, 1117 (Pa. Super. Ct. 1990). Defining such "unwanted and offensive or harmful intrusions," the Restatement provides:

> In order that a contact be offensive to a reasonable sense of personal dignity, it must be one which would offend the ordinary person and as such one not unduly sensitive as to his personal dignity. It must, therefore, be a contact which is unwarranted by the social usages prevalent at the time and place at which it is inflicted.

Restatement (Second) of Torts § 19 (1965). By way of illustration, the Restatement notes that flicking a glove in one's face and deliberately infecting another with a

7

contagious disease are examples of "offensive contact," while pushing against another to pass on a crowded street and taking hold of a sick child are not. Examples in the Restatement derived from case law include such seemingly frivolous acts as tapping on someone's shoulder and following up with an "offensive question" and removing someone's hat. *Id.* (citing *Crawford v. Bergen*, 60 N.W. 205 (Iowa 1894); *Seigel v. Long*, 53 So. 753 (Ala. 1910)). Yet it also includes conduct that is still today obviously offensive. *Alcorn v. Mitchell*, 63 Ill. 553 (1872) (spitting in the face of another); *Forde v. Skinner*, 4 C. & P. 239, 172 Eng. Rep. 687 (1830) (forcibly cutting plaintiff's hair); *Piggly-Wiggly Ala. Co. v. Rickles*, 103 So. 860 (Ala. 1925) (attempted pickpocketing). In attempting to distinguish his conduct, Mr. Falvey argues essentially that defending his wife from unwanted advances is not "unwarranted by social usages prevalent" today. The court cannot agree.[1]

The Pennsylvania Supreme Court has opined about similar conduct in the context of arrests, noting that without the privileged authority to detain someone in the commission of a crime, "[a]n arrest, whether with or without a warrant, usually involves conduct which, unless privileged, is an 'assault' or 'battery'" *Gagliardi v.*

---

[1] Although the court relies on Mr. Falvey's own admissions in the disposition of Plaintiff's battery claim, Plaintiff additionally submitted a video recording of the altercation made by the bar's security camera. (Doc. 32, Ex. 5.) The video makes it clear that the nature of the contact was not simply Mr. Falvey trying to create space between Plaintiff and Mrs. Falvey, more akin to jostling on a crowded street, but instead shows that Mr. Falvey forcibly wrapped his arms around Plaintiff and pulled him back from the bar.

8

*Lynn*, 285 A.2d 109, 112 (Pa. 1971); *see also Kedra v. City of Phila.*, 454 F. Supp. 652, 672 (E.D. Pa. 1978) (citing *Gagliardi*, 285 A.2d at 112 n.5) (noting that when an officer "places his hand on the arrestee's arm to guide him to a police van or affixes handcuffs to the arrestee's wrists," such conduct would constitute battery absent a lawful arrest). Moreover, although Mr. Falvey may have considered himself to be acting admirably or chivalrously, Plaintiff leaning in closely and speaking to his wife does not justify or excuse the offensive or harmful contact. *See* Restatement (Second) of Torts § 13 (1965) ("a surgeon who performs an operation upon a patient who has refused to submit to it is not relieved from liability by the fact that he honestly and, indeed, justifiably believes that the operation is necessary to save the patient's life."). To the extent Mr. Falvey intends to argue that he was acting in defense of others, such an argument fails. An individual is privileged to defend another only to the extent that that individual could have defended himself or herself. Under Pennsylvania law, "whether in a civil or criminal setting, . . . the defender is privileged to respond only to a reasonable belief on his part that he is in imminent danger of bodily harm." *Smith v. Lauritzen*, 356 F.2d 171, 176 (3d Cir. 1966) (citations omitted); *see also Commonwealth v. Presogna*, 292 A.2d 476, 478 (Pa. Super. Ct. 1972) (holding that reasonable force may be used in self-defense for threat of non-deadly bodily harm). Defendants admitted that Plaintiff made no implied or express threats and that they were not in any physical danger. Defendants

9

only objection was that Plaintiff's closeness was making Mrs. Falvey uncomfortable. (*See* Mr. Falvey Dep., p. 97.) This contradicts Defendants' concern that "there is no situation in which a husband may use any measure of force to defend his wife from unwanted conduct . . . without being held liable for battery." (Doc. 53, p. 5.) Instead, the law in Pennsylvania is that one may not use physical force to defend against mere offensive words.

Thus, because Mr. Falvey was obviously not in the process of lawfully detaining Plaintiff, the act of walking up behind him and placing his arms around Plaintiff's neck with the intent to pull him away constitutes, at minimum, an "offensive contact."[2] Accordingly, the Defendants' argument fails and Plaintiff is entitled to summary judgment on his claim for battery because Defendant has admitted to all requisite elements of a claim for battery.

**B. Summary Judgment as to the Negligence Claim Against Mr. Falvey**

To support a claim for negligence under Pennsylvania law a plaintiff must demonstrate: (1) a legal duty; (2) a breach of that duty; (3) a causal relationship between the defendant's negligence and plaintiff's injuries; and (4) damages. *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 n.9 (3d Cir. 2002) (citing *Martin*

---

[2] Assuming *arguendo* that Mrs. Falvey's discomfort was sufficient to render Mr. Falvey's conduct inoffensive, the court finds alternatively that the contact was indeed harmful because it ultimately resulted in injury to Plaintiff. Thus, the "harmful or offensive contact" element would still be satisfied.

10

*v. Evans*, 711 A.2d 458 (Pa. 1998)). Neither party truly presents argument as to this claim. Plaintiff does little more than quote the above standard and states in a conclusory fashion that Mr. Falvey had a societal duty to Plaintiff and breached that duty by pulling him to the ground. In a footnote in their brief in opposition to summary judgment, Defendants argue merely that Plaintiff's cursory argument fails to point to a duty owed by Defendant. The court agrees that Plaintiff's argument is undeveloped and conclusory and, thus, will decline to consider it on summary judgment. *Rice v. First Energy Corp.*, 339 F. Supp. 3d 523, 533 (W.D. Pa. 2018) ("Plaintiffs' argument is woefully inadequate, and the Court is not required to consider any undeveloped or conclusory arguments.") (citing *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997)). Accordingly, summary judgment is denied as to Plaintiff's negligence claim.

### C. Summary Judgment as to Punitive Damages

Defendants seek summary judgment on the issue of punitive damages, arguing that there is no evidence that Defendants' conduct rose "to the level of 'outrageous behavior, either because of the defendant's evil motive or his reckless indifference to the rights of other" sufficient to justify an award of punitive damages. Defendants note that:

> Punitive damages are penile [SIC] in nature. Therefore, they are only awarded in rare cases where the defendant's actions are so outrageous as to demonstrate willful or reckless conduct. Because punitive

damages are intended to punish the tortfeasor for outrageous conduct and deter him, the state of the mind of actor is vital. The "act or the failure to act must be intentional, reckless or malicious."

(Doc. 37, p. 6 (quoting *Huchison v. Luddy*, 896 A. 2d 260, 1265 (Pa. Super. Ct. 2006)).)

> Not every claim for punitive damages is submitted to a jury. Rather, Pennsylvania precedent provides that the trial court is to act as a "gatekeeper" to determine whether the plaintiff has presented sufficient evidence to support a claim for punitive damages: "It is the role of the trial court to determine whether the plaintiff has presented sufficient evidence from which a jury could reasonably conclude that the defendant acted outrageously." *Slappo v. J's Dev. Associates, Inc.*, 791 A.2d 409, 417 (Pa. Super. 2002). In doing so, "the trial judge must determine whether the plaintiff has presented sufficient evidence to support a punitive damages claim, *i.e.*, facts from which the jury might reasonably conclude that the preponderance of the evidence establishes outrageous conduct by the defendant." *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1098 (Pa. 1985), *abrogated on other grounds by Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800 (Pa. 1989).

*Axiall Corp. v. descote S.A.S.*, No. 15-cv-250, 2017 WL 9487085, *8 (W.D. Pa. Oct. 27, 2017), report and recommendation adopted, No. 15-cv-00250, 2017 WL 5957748 (W.D. Pa. Dec. 1, 2017). The court finds that there is sufficient evidence to require submission to a jury to determine if punitive damages are warranted in this case. Mr. Falvey reacted disproportionately with physical violence to perceived offensive comments. A jury could find that this conduct exhibits a reckless or wanton disregard for the safety of Plaintiff and others in the establishment. *See Hughes v. Babcock*, 37 A.2d 551, 554 (Pa. 1944), (finding an award of punitive

damages to be appropriate where the defendant was larger, younger, and more physically fit than plaintiff and used a disproportionate degree of physical force to forcibly remove the plaintiff from a premises) *abrogated on other grounds by Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800 (Pa. 1989); *see also Thomas v. Univ. of Pittsburgh*, No. 13-cv-514, 2014 WL 3055361, *3 (W.D. Pa. July 3, 2014) (holding that punitive damages may be appropriate where Defendant struck Plaintiff in the face with a closed fist, reasoning that walking across the room to engage in a physical confrontation indicated "willful, wanton or reckless conduct that exceeds a showing of mere negligence, or even gross negligence." (internal quotation omitted)). Accordingly, the evidence presented by Plaintiff is sufficient to support a claim for punitive damages.

### D. Defendants' Rule 50 Motion

Defendants filed a motion pursuant to Federal Rule of Civil Procedure 50, seeking judgment as a matter of law on Plaintiff's claims against Mrs. Falvey, arguing that Plaintiff has failed to present "a legally sufficient evidentiary basis" such that a reasonable jury could find for Plaintiff on those claims. Plaintiff presents a theory that Mrs. Falvey is liable for the tortious acts of her husband because she "gave him a look" which could be interpreted as directing him to attack Plaintiff. In sum, Defendants argue that Mrs. Falvey cannot be held liable for the tortious acts of her husband because she did not direct or consent to his battery against Plaintiff. As

noted by Plaintiff, however, the court may not address Defendants' Rule 50 motion at this stage of the litigation. Rule 50 has effect only after "a party has been fully heard on an issue during a jury trial." Fed. R. Civ. P. 50(a)(1). The arguments made on behalf of Mrs. Falvey would have been appropriate to raise at the summary judgment stage, yet Defendants failed to raise such arguments in their motion for partial summary judgment.

Moreover, the court may not dismiss the claim against Mrs. Falvey *sua sponte* as patently frivolous. *See McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991) (holding that court may dismiss complaint *sua sponte* "when it is patently obvious that the plaintiff could not prevail on the facts alleged"). Although Plaintiff cannot cite to any case law relating to a similar circumstance where a wife implicitly directed a husband to commit a tortious act, the court is constrained to find that Pennsylvania law could conceivably support such a claim. "[I]t is well settled in this Commonwealth that a husband is not responsible for the tortious acts of his wife *committed outside his presence and without his actual or implied consent or direction*." *Cmty. Fed. Sav. & Loan Asso. v. Luckenbach*, 261 A.2d 327, 329 (Pa. 1970) (emphasis added); *see also T.A. v. Allen*, 669 A.2d 360, 363 (Pa. Super. Ct. 1995) ("Appellant 'was not present when the wrong was done and had in no way aided or abetted, counselled or encouraged its commission.'") (quoting *Hinski v. Stein*, 68 Pa. Super. 441, 442 (Pa. Super. Ct. 1917)). Defendants concede that Mrs.

14

Falvey gave her husband "a look" that was meant to communicate her discomfort with Plaintiff. It is unclear what, if anything, Mrs. Falvey intended Mr. Falvey to do about Plaintiff, but outside of the summary judgment context, the court cannot say that the idea that Mrs. Falvey directed Mr. Falvey's tortious act is untenable as a matter of law. Accordingly, the court must deny Defendants' motion without prejudice to renewal at trial.

## IV. Conclusion

For the reasons set forth above, the court finds that Plaintiff is entitled to summary judgment on his claim for battery because Defendant has admitted to all the requisite elements of said tort. The court will deny Plaintiff's motion for summary judgment as to his negligence claim because it was insufficiently developed. The court will also deny Defendant's motion for summary judgment on the issue of punitive damages because reasonable minds could differ as to whether Mr. Favley acted wantonly or with malice. Finally, the court will deny Defendant's Rule 50 motion without prejudice as procedurally improper.

An appropriate order will follow.

*s/Sylvia H. Rambo*____
SYLVIA H. RAMBO
United States District Judge

Dated: March 28, 2019